CASE 38—PROSECUTION AGAINST EZRA HYSER FOR VIOLATION OF THE
    LOCAL OPTION LAW.—OCT. 9.

# Hyser v. Commonwealth.

APPEAL FROM HART CIRCUIT COURT.

FROM SO MUCH OF THE JUDGMENT AS REQUIRES THE DEFENDANT TO
    GIVE BOND FOR HIS GOOD BEHAVIOR HE APPEALS. REVERSED.

LOCAL OPTION LAW—VALIDITY OF AMENDMENT—REQUIRING BOND FOR
    GOOD BEHAVIOR.

Held:  1. Act March 11, 1902 (Acts 1902, p. 41, chap. 14), entitled
    "An act for the better enforcement of" the local option act of
    March 10, 1894 (Acts 1894, p. 123, chap. 52), "and to amend
    section 4" thereof, and which defines the essentials of an indict-
    ment for a violation of the law, makes it unlawful for any per-
    son to furnish another liquor in a local option district, declares
    that the possession of a United States license shall be prima
    facie evidence of guilt, authorizes the court to require one on a
    second conviction to give a bond for his good behavior, provides
    that the place of sale of liquors shipped into a local option dis-
    trict shall be the place where the money is paid or goods de-
    livered, and prohibits the sale of liquor in any local option dis-

Hyser v. Commonwealth.

trict, relates only to one subject, which is expressed in its title, within Constitution, section 51.

2. Act March 11, 1902, section 3 (Acts 1902, p. 42, chap. 14), providing that on the second or any subsequent conviction for a violation of the local option law the court shall require the defendant to execute a bond for his "good behavior" for twelve months, is not void for uncertainty because of the use of the phrase "good behavior."

3. The section is not unconstitutional as imposing double punishment, the requirement of the giving of the bond, if regarded as a punishment, being not for the former offenses, but such former offenses merely aggravating the last offense, and the provision being merely declaratory of the common law.

4. Act March 11, 1902, section 3 (Acts 1902, p. 42, chap. 14), providing that "on the second or any subsequent conviction for a violation" of the local option law the court shall require defendant to execute a bond for his good behavior, refers to a conviction of defendant for an offense committed after his conviction for a previous offense.

S. M. PAYTON, FOR APPELLANT.

1. We contend that the amendment to the local option law of this State approved March 11, 1902, is in violation of section 51 of the Constitution, as it relates to more than one subject— one inhibiting the illegal sale of spirituous liquors, another requiring persons to give bond for their good behavior, and a third providing that one charged with a criminal offense may be convicted upon a presumption of law artificially created by the Legislature and not upon the oral testimony of witnesses brought face to face with the accused.

2. We contend that section 3 of said amendment is void for uncertainty. "To be of good behavior" is a very vague and indefinite expression. By section 382 of the Criminal Code it is specifically provided for what reasons one may be lawfully required to keep the peace and be of good behavior, but not so in this act.

3. We confidently claim and urge that the amendment, at least that portion of it requiring the bond upon a second or any subsequent conviction is unconstitutional as being double punishment.

AUTHORITIES CITED.

Fisher v. Com., 1 Bush, 211; State of West Virginia v. W. M. Gilliland, L. R. A., 426; Constitution, sec. 51; 12 Bush, 394, 198; 13 Bush, 467.

CLIFTON J. PRATT, ATTORNEY GENERAL, AND M. R. TODD, FOR AP-
PELLEE.

1. It can not be said that the taking of a bond from one who
has violated the statutes and for his "good behavior" is foreign
to the subject expressed in the title to the act of March 11, 1902,
amending the local option law which is as follows: "An act for the
better enforcement of an act approved March 10, 1894, entitled
An act whereby the sense of the people of any county, city,
town, district or precinct may be taken as to whether spirituous,
vinous or malt liquors shall be sold, bartered or loaned therein,
and to amend section 4 of said act."

2. We do not think there is much ground for contention that
said act of March 11, 1902, is void for uncertainty because it
does not in apt words say what is meant by "good behavior."

3. The case of W. Virginia v. Gilliland, cited by counsel, is not
in point. He was not twice put in jeopardy for the same offense.
But considering that the security for his good behavior was a
punishment, it can not be denied that the Legislature had the
right to increase the punishment for the second or any subse-
quent offense. Collins v. Henderson, 11 Bush, 74; Chiles v.
Drake, 2 Met., 150; Phillips v. Bridge Co., 2 Met., 222; Johnson
v. Higgins, 3 Met., 569; Smith v. Cochran, 8 Bush, 112.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

The appellant, Ezra Hyser, was convicted in the lower
court under each of four indictments for selling spirituous
liquors in violation of the local option law, his punishment
in three of the cases being a fine of $60 each, and in the
fourth a fine of $100. The fines, together with the costs
of the prosecutions, were immediately paid by him. It ap-
pears from the record that the four convictions of appel-
lant occurred at the same term of court, and the last two
of them on the same day, and that these convictions were
had under the provisions of an act of the Legislature of
Kentucky amendatory of the general local option law, ap-
proved March 11, 1902. Acts 1902, p. 41, c. 14. There are
two sections of this amendment imposing penalties for a
violation of the act. Section 2 provides that "it shall be
unlawful for any person to sell, lend, give procure for or

furnish to another any spirituous, vinous or malt liquors, or have in his possession spirituous, vinous or malt liquors, for the purpose of selling them in any territory where said act is in force, and any person so offending shall be fined not less than fifty, nor more than one hundred dollars, and imprisoned not less than ten nor more than fifty days." It will be observed that the object of the foregoing section is not the punishment of the person who himself sells or otherwise disposes of spirituous, vinous, or malt liquors where local option is in force (for his punishment is provided for by section 5 of the act), but its object is the punishment of those who shall sell, lend, give, procure for, or furnish to another such liquors to be sold by the latter where local option is in force, or for having in their (the former's) own possession such liquors for the purpose of selling them in the forbidden territory. Section 5, under which appellant was convicted, takes the place of section 4 of the original act, and its object is the punishment of any person who sells liquors where local option is in force. Its language embraces any sale, barter, or loan of spirituous, vinous or malt liquors that may be "directly or indirectly" made within the inhibited territory. This section also makes it an offense for any person to knowingly furnish or rent a house room, wagon, or any conveyance or thing in which such liquors are sold, bartered or loaned. And the punishment prescribed for the offenses named in this section is a fine of not less than $60 nor more than $100, or imprisonment in jail not less than ten nor more than fifty days, or both fine and imprisonment, in the discretion of the court or jury. Section 3 of the amendment provides that "on the second or any subsequent conviction for a violation of said act, or any of its amendments, the court shall require the defendant to execute bond in the sum of $200.00

Hyser v. Commonwealth.

to be of 'good behavior' for the period of twelve months."
A subsequent paragraph of section 3 allows the court, in
its discretion, to increase the amount of the bond, and, if
the bond be not given, to commit the defendant to jail for
a period not exceeding ninety days, to be fixed by the court.
During the same term of the court at which the four con-
victions of the appellant were secured, and on the same day
of his conviction on each of the two indictments last tried,
a rule was issued against him by order of the court, re-
turnable on the tenth day of that term, requiring him to
give bond as provided by section 3 of the act, supra. Ap-
pellant appeared in obedience to the rule, and filed a re-
sponse thereto, which the court held insufficient; whereupon
the rule was made absolute, and it was adjudged that he
execute bond in the sum of $200 for his "good behavior" for
a period of twelve months, and upon his failure to do so
that he be confined in jail ninety days. The bond was not
executed by him, and we are now called upon to consider
the questions of law raised by the appeal of the case to this
court.

No complaint is made of the action of the lower court in
the matter of the fines imposed under the indictments, but
it is contended for appellant that the court had no author-
ity to require of him the execution of the bond, because (1)
the act of March 11, 1902, is in violation of section 51 of the
State Constitution, in that it relates to more than one sub-
ject; (2) that section 3 of the act is void for uncertainty;
and (3) that the act imposes a double punishment. Section
51 of the Constitution provides that "no law enacted by the
General Assembly shall relate to more than one subject
and that shall be expressed in the title." The title of the
act approved March 11, 1902, is as follows: "An act for
the better enforcement of an act approved March 10, 1894,

entited 'An act whereby the sense of the people of any county, city, town or district, or precinct may be taken as to whether spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, and to amend section 4 of said .act.' " The general subject of the act is the better enforcement of the "local option law," and is so expressed in its title. Though embracing one or more offenses that are not to be found in the original law of which it is an amendment, it contains no provision that is not germane to the subject expressed in the title, and, as a whole, its meaning is so obvious that it can be readily understood by a person of ordinary intelligence. This court has repeatedly announced, in effect, that no provision of a statute directly or indirectly relating to the subject expressed in the title, having a natural connection therewith, and not foreign to the same, should be deemed within the inhibition of section 51 of the Constitution, which provides that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." Chiles v. Drake, 59 Ky., 146, 74 Am. Dec., 406; L. & O. T. R. Co. v. Ballard, 59 Ky., 165; Jacobs' Adm'r v. L. & N. R. R. Co., 73 Ky., 263; Allen v. Hall, 77 Ky., 85; McArthur v. Nelson, 81 Ky., 67, 4 R., 754; Commonwealth v. Godshaw, 92 Ky., 435, 13 R., 572, 17 S. W., 737; Conley v. Commonwealth, 98 Ky., 125, 17 R., 678, 32 S, W., 285; Weber v. Commonwealth, 24 R., 1726, 72 S. W., 30. Tested by the foregoing rule, the statute in question is not repugnant to section 51 of the Constitution, and we so decide.

We are not disposed to agree with appellant's contention that so much of section 3 of the act, supra, as empowers the court, after two convictions for a violation of its provisions, to require of the person so convicted a bond for his "good behavior," is void for uncertainty because it

fails to indicate in express language what is meant by the words "good behavior." Section 382 of the Criminal Code provides that "a person may be arrested for the purpose of requiring of him security to keep the peace, or for his good behavior." The grounds for such arrest are set forth in subsections 1, 2 and 3 of section 382; but the Code nowhere defines the meaning of the term "good behavior." It is, however, an expression as old as the common law. Behavior is the mode of conducting one's self, and is used to express one's manner of living. To be put upon one's "good behavior" is to be in a state of trial, in which something important depends on propriety of conduct. Therefore the legal signification of the expression "good behavior," as used in the statute supra, is that one who is placed under bond for his "good behavior," as therein authorized, is to be in a state of trial or probation with respect to the subject-matter of the statute. He must, for a given time, behave with such propriety of conduct as to make himself amenable to the statute. In other words, he must keep within its letter and spirit by refraining from any further violation of its provisions during the period of probation, otherwise he or his surety will have to pay the penalty named in the bond. We are of the opinion, therefore, that the meaning of the words "good behavior," found in the statute is so well known, and their connection with the intent and purpose of the statute so patent, that they can not fail to be understood by persons of ordinary intelligence, and, if so, it follows that the statute can be neither uncertain nor void in the particular complained of.

We are likewise unable to sustain the third and last contention of appellant's counsel that the statute supra as amended, or that part of it requiring the bond upon a second or any subsequent conviction, imposes double pun-

ishment, and is therefore unconstitutional. If it be conceded that the judgment requiring the convicted person to enter into bond for good behavior is punishment, that is a part of the penalty inflicted by virtue of the provision of the statute. It is a punishment which falls under the head of "preventive justice," Blackstone's Com., vol. 4, p. 252. The only actual punishment, however, that could result to the appellant from the requisition of the judgment as to the giving of the bond would arise from his failing to execute it, as his imprisonment in jail for the period of ninety days would be the consequence. The law makes a distinction between the one-time offender and the hardened offender, or criminal, for the former may amend his way, become a good citizen, and thereby atone for his one act of wrongdoing, while the repeated offenses of the latter may so provoke the majesty of the law as to compel the infliction upon him of its severest penalty, and even a repetition thereof as a complete deterrent, if demanded by the public good. This principle has been recognized by the lawmaking power of our State, and carried into effect by the repeated adjudications of this court. For instance, section 1130, Kentucky Statutes, 1899, provides that any person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction, and, if convicted a third time of felony, he shall be confined in the penitentiary during his life. The validity of this statute has been repeatedly upheld by this court upon the ground that it is not in violation of the constitutional provision that no one for the same offense shall be twice put in jeopardy. The increased punishment is not for the former offenses, but the previous convictions merely ag-

gravate the last offense and add to its punishment. The accused is not required to answer to the former charges and defend against them. Nothing is heard in reference to the former trials save the fact of conviction. Mount v. Commonwealth, 2 Duv., 93; Taylor v. Commonwealth, 3 Ky. Law Rep., 783; Boggs v. Commonwealth, 9 R., 342, 5 S. W., 307; Chenowith v. Commonwealth, 11 R., 561, 12 S. W., 585; Wharton v. Commonwealth, 7 Ky. Law Rep., 826. There was a discretionary jurisdiction at common law in the court trying a person charged with misdemeanor to bind the accused after conviction, and, as a part of the judgment, to good behavior for a time, and such jurisdiction was inherent in every court of record having criminal jurisdiction. "If a person have been convicted of a misdemeanor, it is usually part of the judgment that he shall find security for his good behavior for some time." 9 Bacon's Abr., 309. "This requisition of sureties has been several times mentioned before as part of the penalty inflicted upon such as have been guilty of certain gross misdemeanors; but there, also, it must be understood rather as a caution against the repetition of the offense than any immediate pain or punishment." Bl. Com., vol. 4, p. 251. It will be observed, therefore, that section 3 of the statute supra, in requiring security for good behavior of the person convicted, follows, and is but declaratory of, the common law. An examination of the case of State v. Gilliland (W. Va.), 41 S. E., 131, 57 L. R. A., 426, which is strongly relied on by counsel for appellant, will show that it is not in conflict with the view herein expressed. In that case the defendant was convicted under indictment for fraudulently selling spirituous liquors by retail without license, and his punishment fixed at a fine of $15. In addition he was required by the court to give bond in the sum of $500 for his good behavior, and "not

to sell intoxicating drinks contrary to law for the period
of twelve months." The indictment was under section 3,
c. 32, Code W. Va., 1899, which prescribes as punishment
for the offense of which the accused was convicted a fine
of not less than $10 nor more than $100, and, at the discre-
tion of the court, imprisonment in the county jail not ex-
ceeding three months. It appears from the opinion of the.
Supreme Court of West Virginia in the case supra that the
Criminal Code of that State contains no provision authoriz-
ing the trial court to require such a bond as was attempted
to be exacted of the person convicted; hence it was held that,
as the offense of which he stood convicted was not an of-
fense at common law, but purely one of statutory
creation, the court was without jurisdiction to impose a com-
mon-law punishment, but was restricted to the infliction
of the penalty prescribed by the statute, which did not in-
clude the authority to require of the accused a bond for his
good behavior, but only subjected him to a fine and impris-
onment in jail not exceeding three months. It is the law
in Kentucky, as in West Virginia, made so by statute, that
a common-law offense, for which punishment is prescribed
by statute, shall be punished only in the mode so prescribed;
but in the case at bar the offense as well as the punishment
is statutory, and our statute, unlike that of West Virginia,
expressly confers upon the court jurisdiction to require such
a bond as appellant was adjudged to execute—that is to
say, this jurisdiction is not derived from the common law,
but it is conferred by the very letter of the statute. For
the reasons indicated, we are of the opinion that the case of
State v. Gilliland can not be accepted as authority in point.

But while we are unable to sustain the objection raised
against the statute under consideration by counsel for appel-
lant, we are nevertheless constrained to hold that the action

of the lower court in requiring of appellant the bond in question was premature. The authority for requiring bond conferred upon the court by section 3 of the amendment may be exercised by the court only "on the second or any subsequent conviction for a violation of the act [local option law] or any of its amendments." In our opinion, the words "second or any subsequent conviction" refer to a conviction of the accused for an offense against the statute committed after his conviction for a previous like offense. In requiring of the offender a bond for his good behavior, the aim of the statute is two-fold: First, to prevent further violation of its provisions; second, to effect the reformation of the offender. How can the latter object be attained, and what opportunity for reformation would be afforded him, unless the construction here suggested should obtain? In Brown v. Commonwealth, 100 Ky., 127, 18 R., 630, 37 S. W., 496, the appellant, at the June term, 1896, of the Lincoln circuit court, was indicted upon two charges of breaking into a warehouse. These indictments were returned on the same day. He pleaded guilty to each, and, after verdicts fixing his punishment at five years' imprisonment in the penitentiary in each case, was sentenced. On the day following the sentence in each of these cases he was again indicted, the last indictment charging him with the crime of feloniously breaking into and entering a dwelling house, and also setting up the two former convictions for felony at the same term. Upon the trial, and notwithstanding his plea of not guilty, the jury found him guilty, fixed his punishment at confinement in the penitentiary for life, and the court sentenced him accordingly; all of which was done pursuant to section 1130, Kentucky Statutes, 1899. An appeal was taken, and in construing that section of the statute this court said: "The question presented for de-

Hyser v. Commonwealth.

cision is whether the statute in question authorizes the imposition of the increased penalty for an offense not committed after the original convictions. We think not. The statute was manifestly intended to provide an increased penalty for a subsequent offense, in order to deter the offender from its repetition. . . . The reformatory object of the statute, namely, to provide a deterrent from future crime, would not be effected by a construction which gives to the offender no opportunity to reform. Moreover, doubtful questions as to the severity of the penalty are to be resolved in favor of the accused. . . . We are of the opinion that the words 'convicted a second time of felony,' and 'convicted a third time of felony,' must be restricted to felonies committed subsequent to the dates of the convictions relied on to effect an increase of the penalty, for otherwise no *locus paenitentiae* would be offered to the accused." We do not feel at liberty to depart from the rule thus announced by this court, and hence must hold that the action of the lower court requiring of the appellant the bond for good behavior in this case was unauthorized, because such action was taken before there was a second or subsequent conviction of the appellant for the violation of the local option law in the meaning of the statute.

Wherefore the judgment of the lower court requiring of appellant the execution of the bond is reversed, and cause remanded for further proceedings consistent with the opinion herein.