### STATE OF CONNECTICUT *v.* PATRICK J. FITZGERALD
### (AC 16687)

O'Connell, C. J., and Sullivan and Dupont, Js.

---

Argued October 26, 1998—officially released July 20, 1999

*Michael W. Murray,* for the appellant (defendant).

*Lisa Herskowitz,* assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *John Cashmon,* assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant, Patrick J. Fitzgerald, appeals from the judgment of conviction, rendered after a trial to the court, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a).[1] Because this

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

was the defendant's third conviction of the same offense within ten years, he was subject to the enhanced penalties of § 14-227a (h) (3).[2] Due to his previous convictions, special arraignment procedures were mandated by Practice Book §§ 36-14, 37-10 and 37-11, formerly §§ 619, 647 and 648, respectively.[3] The defendant filed a motion for a new trial claiming a violation of Practice Book § 37-11 that was denied. The sole issue on appeal is whether a new trial is required when the trial court is apprised of part B of the information prior to the trial. We answer in the affirmative and, accordingly, reverse the judgment of the trial court.

The relevant procedural history is as follows. The defendant, in a two part information, was charged in part A with operating a motor vehicle while under the influence of intoxicating liquor and in part B with having

---

[2] General Statutes § 14-227a (h) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall . . . (3) for conviction of a third violation within ten years after a prior conviction for the same offense, be fined not less than one thousand dollars nor more than four thousand dollars and imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and have his motor vehicle operator's license or nonresident operating privilege suspended for three years . . . ."

[3] Practice Book § 36-14 provides in relevant part: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. . . ."

Practice Book § 37-10 provides: "Where the information is in two parts pursuant to Section 36-14 and alleges, in addition to the principal offense charged, a former conviction or convictions, the plea and the election of a method of trial shall first be taken only on the first part of the information."

Practice Book § 37-11 provides: "Prior to the time the defendant enters a guilty plea or, if the defendant pleads not guilty, prior to the commencement of trial, the clerk shall notify the defendant, *in the absence of the judicial authority*, of the contents of the second part of the information. The clerk shall enter on the docket the time and place of the giving of such notification and, where necessary, shall include entry thereof in the judgment file." (Emphasis added.)

two prior convictions of the same statute. After the defendant elected to be tried by the court, but before the trial began, the state's attorney informed the trial court that there was a part B of the information.[4] After the trial court found the defendant guilty of the crime charged in part A of the information, the defendant raised the issue of this case relating to the disqualification of the trial court and asked for a new trial. The defendant argues that informing the trier of fact of the existence of part B of the information is a violation of the spirit of Practice Book § 37-11 and improperly informs the trial court of the defendant's prior convictions.

The state treats this as a belated claim of judicial disqualification and urges us to reject it under the precedent of *State* v. *Kohlfuss*, 152 Conn. 625, 628, 211 A.2d 143 (1965).[5] The state argues that the defendant should have filed a motion to disqualify the judge, and, since no such motion or judicial bias claim was raised before the trial began, the violation of § 37-11 was waived and should not be reviewed on appeal. We are not persuaded.

Due to the potential for a deprivation of constitutional rights when a trial is not conducted before an impartial tribunal and the obvious implications of bias inherent in the mistake of informing the trier of the existence of a part B information prior to a trial to the court, we examine the claim under the plain error doctrine. "Such review is reserved for truly extraordinary situations

[4] On November 5, 1996, the state's attorney filed a substitute information to which the defendant entered a plea of not guilty. Immediately following, the prosecutor stated for the record that the defendant "was previously advised of part B of the information on April 11 . . . . I just wanted that on the record." The court responded, "Okay, so noted."

[5] The fact pattern in *Kohlfuss* involved a question of disqualification of a judge because the judge had sat as a member of the sentence review division reviewing a previous and unrelated crime. That is not the situation in this case.

where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Miller*, 202 Conn. 463, 469, 522 A.2d 249 (1987); *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985); *State* v. *Ralph*, 17 Conn. App. 247, 249, 551 A.2d 774 (1989); *Barca* v. *Barca*, 15 Conn. App. 604, 606, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988).

When proof of a defendant's prior conviction is used to enhance the punishment for a contemporaneous conviction of a substantive offense, our rules of practice require the state to draft the information in two parts. *State* v. *Jones*, 234 Conn. 324, 339, 662 A.2d 1199 (1995).[6] "In a two-part information, the proof of part [A] relates only to the commission of the crime charged . . . not until part [B] of the information has been determined does the penalty attach to the crime proven under part [A]." *State* v. *LaSelva*, 163 Conn. 229, 233–34, 303 A.2d 721 (1972). It is important to recognize that a two part information does not charge one crime in the first part and a second crime in the second part; there is only one information charging one crime, and the second part is presented for sentence enhancement purposes only. Id.

Practice Book § 37-11 requires that part B of the information must be read to the defendant *"in the absence of the judicial authority . . . ."*[7] (Emphasis added.) At this point, a defendant has not yet pleaded or made his election as to whether he will be tried by a judge or jury. The defendant's pleas and elections both may be affected by the knowledge that he may be facing severely enhanced penalties because of the exposure

---

[6] See footnote 3.

[7] The court clerk properly performed his duty of reading part B to the defendant in the absence of the judicial authority.

to part B. The only reasonable ground for requiring part B to be read outside of the presence of the judicial authority is to prevent the judicial authority from being prejudiced by the information regarding prior convictions in the event the defendant elects a trial to the court. Compliance with this rule helps avoid bias and prejudice and ensures a fair trial. Because it is for sentence enhancement purposes only, a part B information is not to be presented to the trier of fact, whether it is a judge or jury, before trial because it is entirely conceivable that the trier, even unconsciously, could determine the factual questions presented in part A based upon its knowledge of part B.

The requirements we discuss here are not a mechanism recently devised by the judges. The procedure became part of our substantive case law three quarters of a century ago when our Supreme Court adopted the procedure prescribed by an English statute.[8] *State* v. *Ferrone*, 96 Conn. 160, 175, 113 A. 452 (1921). After describing the two part information system, the *Ferrone* court declared that "[i]t cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice" if the two part procedure was not followed. Id., 173. This procedure ensures a fair judgment of whether the defendant committed the current offense with which he is charged. The trier cannot be influenced by the fact that the defendant previously had been convicted of the same crime. Id.

In *Ferrone*, our Supreme Court established the bright line rule that to avoid the possibility of prejudice when an information includes a defendant's history of prior convictions as a basis for increasing a sentence, the trier of fact that hears the evidence concerning the

[8] 24 and 25 Vict. c. 90, § 37; *Reg.* v. *Martin*, L.R.1 Cr. C. 214 (1861).

current charge[9] cannot be advised of any prior convictions until after it has first decided the issue of guilt as to the current charge. Id.

"It follows that, until the verdict of the jury on the principal issue has been rendered, no knowledge of the alleged previous convictions should reach them . . . by reading that part of the information in which they are recited . . . ." Id., 174–75. In an unusual display of pride, the Supreme Court has expressly referred to the kudos that Connecticut's two part procedure has received from other jurisdictions. *State* v. *LaSelva*, supra, 163 Conn. 233 n.4.[10]

In *State* v. *Jones*, supra, 234 Conn. 324, our Supreme Court reiterated that mention of the defendant's prior criminal conduct to the trier of fact, a jury in that case, was manifestly unjust. "[T]he probability of a jury inferring a predisposition to commit the crime with which the defendant stands charged is logically increased when the evidence pertains to misconduct similar to that involved in the case on trial . . . ." Id., 345. "[N]o reasonable man can doubt that the [trier of fact] not only may have been, but most probably was, so unfavorably influenced against the accused [by the prosecutor's reference to prior convictions] as to deprive him of a fair trial. This is sufficient reason to grant a new trial. *Williams* v. *United States*, 168 U.S. 382, [18 S. Ct. 92, 42 L. Ed. 509 (1897)]; *People* v. *Aikin*, 66 Mich. 460, 33 N.W. 821 [1887]; *Anderson* v. *State*, 104 Ala. 83, 16 So.

---

[9] This distinguishes *State* v. *Brunori*, 21 Conn. App. 331, 574 A.2d 222 (1990), in that two different judges were involved.

[10] "Our procedure has been praised repeatedly for its fairness to defendants. See *Spencer* v. *Texas*, 385 U.S. 554, 567, 87 S. Ct. 648, 17 L. Ed. 2d 606, rehearing denied, sub. nom. *Bell* v. *Texas*, 386 U.S. 969, 87 S. Ct. 1016, 18 L. Ed. 2d 125 [1967]; *Lane* v. *Warden*, 320 F.2d 179, 183 (4th Cir. [1963]); *Higgins* v. *State*, 235 Ark. 153, 159, 357 S.W.2d 499 [1964], dicta rejected in *Miller* v. *State*, 239 Ark. 836, 841, 394 S.W.2d 601 [1965]; *Heinze* v. *People*, 127 Colo. 54, 58–59, 253 P.2d 596 [1953]; *People* v. *Sickles*, 156 N.Y. 541, 545, 51 N.E. 288 [1898]." *State* v. *LaSelva*, supra, 163 Conn. 233.

108 [1894]; *McDonald* v. *The People,* 126 Ill. 150, 18 N.E. 817 [1888]; *State* v. *Greenleaf,* 71 N.H. 606, 54 Atl. 38 [1902]; *People* v. *Fong Sing,* 38 Cal. App. 253, 175 Pac. 911 [1918]; *State* v. *Martel,* 103 Me. 63, 68 Atl. 454 [1907]; *People* v. *Fielding,* 158 N.Y. 542, 53 N.E. 497 [1899]." *State* v. *Ferrone,* supra, 96 Conn. 164.

The state argues that the transcript shows that during the part A trial the court had forgotten that it had been improperly informed of the existence of a part B of the information. This argument is not persuasive. The issue before us is the legal effect of a violation of the substantive rule of *State* v. *Ferrone,* supra, 96 Conn. 172–76, as codified by Practice Book § 37-11. It would be irrational for us to hold that a case-by-case determination must be made, the determining factor being how good a memory each trial judge possessed. The state's contention would create the bizarre situation in which it would be proper to mention part B before a judge with a poor memory but would be cause for reversal to mention part B before a judge with a good memory.

Refusal to rely on a trial judge's mental processes after hearing improper material is well established in our case law. "Although it may be true that the decision at which the court arrived upon the merits of the case might have been unaffected by this improper [statement], we cannot be certain of it. . . . A judge has not such control over his mental faculties that he can definitely determine whether or not inadmissible evidence he has heard will affect his mind in making his decision." (Internal quotation marks omitted.) *Borkowski* v. *Borkowski,* 228 Conn. 729, 748, 638 A.2d 1060 (1994), quoting *Barbieri* v. *Cadillac Construction Corp.,* 174 Conn. 445, 451, 389 A.2d 1263 (1978); see also *Kovacs* v. *Szentes,* 130 Conn. 229, 232, 33 A.2d 124 (1943); *Peck* v. *Pierce,* 63 Conn. 310, 320, 28 A. 524 (1893); see *Buckingham's Appeal from Probate,* 60 Conn. 143, 160, 22 A. 509 (1891). "Since we cannot

speculate as to the degree of influence which the objectionable [material] had in the final result . . . 'the safer rule is to grant a new trial.' " *Barbieri* v. *Cadillac Construction Corp.*, supra, 451.

The *Barbieri* precedent is directly on point here where the trial court was apprised of improper material in violation of substantive case law and the intended purpose of the rules of practice. This rule of law and procedure does not harm the state and protects the defendant from unnecessary prejudice. *State* v. *Jones*, supra, 234 Conn. 337. Accordingly, we conclude that the remarks of the state's attorney referring to the part B information tainted the entire case and constituted plain error requiring a new trial. The trial court should have granted the defendant's motion for a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.